**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**ISRAEL TIMOTHY RUTLAND,**

      Plaintiffs,

v.

**CHRIS STRICKLAND**,

      Defendant.

Civil Action No. 7:15-CV-139 (HL)

**ORDER**

Plaintiff Israel Timothy Rutland filed this lawsuit against Defendant Chris Strickland pursuant to 42 U.S.C. § 1983, claiming Defendant violated his rights under the Fourth Amendment.[1] Presently pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 51). Plaintiff filed no response to Defendant's motion. After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, the Court concludes that there are no genuine issues of material fact as to any claim and **GRANTS** Defendant's motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Chris Strickland is a deputy sheriff employed by the Tift County Sheriff's Office. (Strickland Dep., p. 5). Around 8:30 p.m. on November 7, 2013, Defendant was stopped at a stop sign at the intersection of Fletcher Road and Ferry Lake when he observed a silver F-150 pickup truck backing into the

---

[1] Plaintiff initiated this action *pro se*. He later retained counsel. (Doc. 8).

roadway, causing an approaching vehicle to slam on its brakes to avoid hitting the truck. (Id. at p. 6). The driver of the truck ran off the side of the road as he turned onto Fletcher Road. (Id.).

Defendant turned his patrol car around to pursue the truck. (Id. at p. 7). As Defendant approached, he noted the truck was traveling at fifty-five miles per hour in a thirty-five mile per hour zone. (Id.). Defendant again observed the truck running off the road. (Id.). The truck turned onto Melanie Lane, a dirt road, at which point Defendant activated his lights, signaling the truck to stop. (Id.). The truck did not stop, instead continuing along Melanie Lane then onto Bowen Road and Chula-Brookfield Road. (Id.). The truck ran the stop sign on Chula-Brookfield Road and continued driving at around 98 miles per hour in a 55 mile per hour zone. (Id.). Defendant's supervisor instructed him to deactivate his lights and siren but to keep the truck within sight. (Id. at p. 8). Defendant eventually lost view of the truck, and the pursuit ended. (Id. at p. 9).

On November 10, 2013, Defendant received a telephone call from Georgia State Patrol Trooper Jenkins. (Id. at p. 50). Trooper Jenkins heard about Defendant's pursuit of the silver F-150. (Id.). The description of the vehicle matched the description of a vehicle involved in a hit-and-run incident in Berrien County. (Id.). Trooper Jenkins reported that he identified the driver of the truck as Plaintiff Israel Timothy Rutland. (Id. at p. 51).

2

The next morning, November 11, Defendant went to the home of Billy Rutland, Plaintiff's father. (<u>Id.</u> at p. 54). Mr. Rutland reported that his son spent the previous night in Tifton with friends. (<u>Id.</u>). Mr. Rutland confirmed that Plaintiff was in possession of the silver pickup truck. (<u>Id.</u>). Defendant told Mr. Rutland that Plaintiff had a suspended driver's license and was not supposed to be driving. (<u>Id.</u> at p. 55). He also informed Mr. Strickland that he needed to speak with Plaintiff about the November 7 incident. (<u>Id.</u>). Mr. Strickland said he would pass the message along to Plaintiff. (<u>Id.</u>).

Defendant spent the day looking for Plaintiff in areas Plaintiff was known by law enforcement to frequent, including drug houses. (<u>Id.</u> at p. 56). Around mid-day, Defendant was assisting a disabled vehicle when he saw Plaintiff drive past in the silver truck. (<u>Id.</u> at p. 57). Defendant radioed to dispatch to inquire whether another patrol vehicle was in the vicinity who could attempt to locate Plaintiff. (<u>Id.</u> at p. 59). Plaintiff could not be found at that time. (<u>Id.</u>). An hour or so later, Defendant passed Plaintiff on Highway 82. (<u>Id.</u> at p. 60). Defendant lost sight of Plaintiff while maneuvering through traffic. (<u>Id.</u>).

Defendant decided to park near Exit 55, where he could observe the Rutland's driveway. (<u>Id.</u>). Defendant saw the silver truck pull into the driveway of the residence and drive around to the backyard. (<u>Id.</u> at p. 61). Defendant followed, pulling up behind the truck as Plaintiff opened the door and began

3

exiting. (Id.). Defendant inquired about the evening of November 7 as well as about the hit-and-run incident. (Id.). Plaintiff appeared agitated, his eyes bloodshot and watery. (Id. at p. 62). As Defendant moved closer to Plaintiff, he detected the odor of alcohol emanating from Plaintiff. (Id.).

Defendant initiated a conversation about Plaintiff's suspended driver's license. (Id.). Plaintiff responded that he had a work permit. (Id.). Defendant asked Plaintiff to show him the permit. (Id. at p. 63). Plaintiff retrieved a paper from his truck, which turned out to be an unexecuted application for a work permit. (Id.). During this interchange, Defendant noticed four clear green baggies in plain sight in the driver's side door handle of Plaintiff's truck. (Id. at p. 64). The bags appeared to contain marijuana. (Id.).

Defendant grabbed Plaintiff's arm and told Plaintiff he was under arrest. (Id.). As Defendant reached to place handcuffs on Plaintiff, Plaintiff threw the truck into gear and began moving forward, dragging Defendant alongside the truck. (Id.). The grass caused the truck to slow enough for Defendant to regain his footing and push himself away from the truck. (Id. at p. 65). Defendant ran back to his patrol car. (Id. at p. 66). As Defendant was getting into the car, Plaintiff placed his truck in reverse and started coming toward Defendant. (Id.). Deputy Strickland jumped back from his car to avoid being hit. (Id.). Plaintiff stopped within three or four feet of Defendant's vehicle. (Id.). Plaintiff drove

4

forward quickly then stopped abruptly. (Id.). Defendant retrieved his taser and moved toward Plaintiff's truck. (Id. at p. 66-67). Plaintiff placed the truck back in gear and left at a high rate of speed. (Id. at p. 67).

Defendant returned to his patrol car, activated his lights, and radioed to the Sheriff's Office that Plaintiff was on the run. (Id.). Defendant pursued Plaintiff at seventy to eighty miles per hour. (Id. at p. 68). Defendant later turned the chase over to an officer with Motor Carrier Compliance, a division of the Department of Public Safety. (Id. at p. 72). Plaintiff outran both officers. (Id.). Defendant obtained felony arrest warrants charging Plaintiff with Aggravated Assault Upon a Law Enforcement Officer, in violation of O.C.G.A. § 16-5-21, and Fleeing/Eluding Police Officer, in violation of O.C.G.A. § 40-6-395. (Id. at p. 75; Doc. 51-2).

Early the next morning, the Tift County Sheriff's Office launched a manhunt for Plaintiff. Following a high-speed pursuit, law enforcement officials apprehended Plaintiff. Plaintiff filed three lawsuits, one against Defendant and two others against officers involved in the final police chase. The Court consolidated all three actions into a single lawsuit. See Rutland v. Williamson, Case No. 7:15-CV-160-WLS-TQL and Rutland v. Strickland, Case No. 7:15-CV-161-HL, consolidated into Rutland v. Cospelich, Case No. 7:15-CV-139-HL.

## II.   SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. "If the record presents factual issues, the court must not decide

6

them; it must deny the motion and proceed to trial." <u>Herzog v. Castle Rock</u> <u>Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. <u>Matsushita Elec. Indus. Co. v.</u> <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The moving party must meet its burden even when, as here, the non-moving party fails to respond to the motion for summary judgment. Courts "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." <u>United</u> <u>States v. One Piece of Real Prop. Located at 5800 SW 7th Ave., Miami, Fla.</u>, 363 F.3d 1099, 1101 (11th Cir. 2004). In considering the merits of the unopposed motion, a court

> need not sue sponte review all of the evidentiary materials on file  at the time the motion is granted[ ] but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.

<u>Id.</u> The court cannot simply accept the facts stated in the moving party's statement of material facts as true; rather, the court must review the movant's citations to the record and confirm that there are no genuine issues of material fact. <u>Id.</u> at 1103 n.6.

7

III.    **DISCUSSION**

Plaintiff asserts claims against Defendant pursuant to § 1983 based on alleged violations of his Fourth Amendment rights. Plaintiff alleges Defendant unlawfully entered his property without a warrant, conducted a search, and attempted to arrest Plaintiff. Construing the evidence in the light most favorable to Plaintiff, there is no evidence from which a reasonable jury could conclude that Defendant violated Plaintiff's constitutional rights. Defendant accordingly is entitled to qualified immunity.

A.    **Qualified Immunity Standard**

"A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). Qualified immunity offers complete protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "When properly applied, [qualified immunity]

protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

To receive qualified immunity, the official first must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Here, there is no dispute that Defendant was acting within his discretionary authority at the time of the alleged events. See Crosby, 394 F.3d at 1332 ("[M]aking an arrest is within the official responsibilities of a sheriff's deputy."); Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (concluding that a state trooper was clearly acting within the scope of his discretionary authority when he charged and arrested the plaintiff). Once the official establishes that he was engaged in a "discretionary function," the burden shifts to the plaintiff "to show that the defendant is not entitled to qualified immunity." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original). To demonstrate that the official is not entitled to qualified immunity, the plaintiff must show (1) that the official violated a constitutional right; and (2) that the constitutional right violated was "clearly established" at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman, 370 F.3d at 1264.

9

### B.     Entry into Open Yard

Plaintiff claims Defendant violated his Fourth Amendment rights when Defendant entered the backyard of Plaintiff's father's residence without a warrant. Plaintiff's claim fails because he has not established that he had a reasonable expectation to privacy in the yard area. He therefore lacks standing to assert a violation of his Fourth Amendment rights based on Defendant's entry onto the property.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969). Accordingly, the Fourth Amendment's protections apply only "to any thing or place with respect to which a person has a reasonable expectation of privacy." United States v. Ross, 963 F.3d 1056, 1062 (11th Cir. 2020) (quotation marks and citation omitted). The person asserting a violation of his rights under the Fourth Amendment bears the burden of establishing an expectation of privacy. United States v. Bachner, 706 F.2d 1121, 1125 (11th Cir. 1983).

Plaintiff has not shown that he had an expectation of privacy in the driveway or backyard area of his father's home. There is no evidence that

Plaintiff lived at the home or even that he had permission to be there. Having failed to establish a right to privacy in the area in question, Plaintiff has no standing to assert a Fourth Amendment violation.

Even if Plaintiff could establish a reasonable expectation in privacy in the area behind his father's home, Defendant's entry onto the premises did not violate Plaintiff's Fourth Amendment rights. "The private property immediately adjacent to a home is entitled to the same protection against unreasonable search and seizure as the home itself." United States v. Taylor, 458 F.3d 1201, 1206 (11th Cir. 2006) (citing Oliver v. United States, 466 U.S. 170, 180 (1984)). However, protection of a home's curtilage is not unlimited. Id. The Fourth Amendment extends "to that property that the individual should reasonably expect to be treated as the home itself." Id. The extent to which an individual may reasonably expect an area to be treated the same as the home may be determined by examining "(1) the proximity of the area claimed to be curtilage to the home; (2) the nature of the uses to which the area is put; (3) whether the area is included within an enclosure surrounding the home; and (4) the steps the resident takes to protect the area from observation." Id. (citing United States v. Dunn, 480 U.S. 294, 301 (1987)).

The undisputed evidence in this case shows that Defendant followed Plaintiff from the roadway into the driveway, around the back of Plaintiff's father's

residence, and into an open yard area. The driveway appeared to be used for regular ingress and egress from the property, and the general area where Plaintiff parked his truck was not enclosed in any way or obstructed from public view. There otherwise is no evidence from which a reasonable jury could conclude that the driveway was located within the curtilage of the residence. See United States v. Alvin, No. CR208-25, 2009 WL 722267, at *3 (S.D. Ga. Mar. 18, 2009). Defendant's entry into the driveway accordingly did not violate Plaintiff's Fourth Amendment rights.

Moreover, it is well established that "the Fourth Amendment is not 'implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with the search of the premises.'" United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006) (citing Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971) (finding no warrant necessary for officers to approach a house to question the occupants)). An officer "may walk up the steps and knock on the front door of any man's castle, with the honest intent of asking questions of the occupant thereof." Id. (quotation marks and citation omitted). Defendant's entry onto the property to engage Plaintiff in a voluntary conversation about Plaintiff's alleged involvement in an earlier hit-and-run incident as well as the status of Plaintiff's driver's license did not infringe on Plaintiff's constitutional

rights. Absent evidence of a constitutional violation, Defendant is entitled to qualified immunity.

### C.   Search of Vehicle

Plaintiff next contends Defendant conducted an unlawful search of Plaintiff's truck. The undisputed evidence shows, however, that Plaintiff voluntarily opened the door to his truck and that the bags Defendant believed contained marijuana were in plain view in Plaintiff's door handle.

Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). The theory behind the doctrine is that "if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers the vantage point." Id.; see also Texas v. Brown, 460 U.S. 730, 739-40 (1983) (contraband on car seat in plain view of officer who stopped car and asked for driver's license properly seized).

There is no evidence Defendant searched Plaintiff's truck. Rather, the undisputed evidence shows that when Plaintiff opened the door of his truck to

retrieve his driving permit, Defendant observed several bags of marijuana in the door handle. Defendant also never seized the contraband as Plaintiff returned to his truck and left the scene before Defendant could collect the drugs. Consequently, Plaintiff cannot establish a violation of his constitutional rights, and Defendant is entitled to qualified immunity as to this claim.

### D.    Attempted Arrest

In his Complaint, Plaintiff alleges Defendant attempted to arrest him unlawfully. His supplemental complaint appears to assert an additional claim for unlawful detention. Because Defendant had probable cause to arrest Plaintiff, Plaintiff's claims relating to his temporary detention and attempted arrest fail.

The existence of probable cause bars a Fourth Amendment false arrest claim. See Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002) (quotation marks omitted). The probable cause standard "is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007).

"[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987). Accordingly, "[w]hile an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." Skop, 485 F.3d at 1137. To receive qualified immunity, "an officer need not have actual probable cause but only 'arguable probable cause.'" Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997)). "The standard for arguable cause is 'whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law.'" Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997) (emphasis in original) (quoting Eubanks v. Gerwen, 40 F.3d 1157, 1160 (11th Cir. 1994)). The arguable probable cause standard "recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists." Skop, 485 F.3d at 1137 (emphasis omitted).

"Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010). Establishing

15

arguable probable cause does not require proof of every element of a crime. Id. Rather, if an officer had arguable probable cause to make an arrest for any offense, qualified immunity applies. Skop, 485 F.3d at 1138.

Defendant is shielded by qualified immunity because he had probable cause to arrest Plaintiff for several different offenses. Under Georgia law, it is unlawful for a person to drive or be in physical control of a moving vehicle while under the influence of alcohol or any drug. O.C.G.A. § 40-6-391(a)(1) and (2). Defendant witnessed Plaintiff driving his truck. When Plaintiff exited his truck, he was visibly impaired. Plaintiff's eyes were bloodshot and watery, and Defendant detected the odor of alcohol. Defendant accordingly had at least arguable probable cause to arrest Plaintiff for driving under the influence.

Under the circumstances presented, Defendant also had probable cause to arrest Plaintiff for failure to produce a valid driver's license pursuant to O.C.G.A. § 40-5-20. Defendant knew prior to stopping to speak with Plaintiff that Plaintiff had a suspended driver's license. Plaintiff was not otherwise able to produce a valid work permit. Defendant's observation of multiple bags of what appeared to be marijuana additionally formed a basis for probable cause to arrest Plaintiff for possession of marijuana under either O.C.G.A. § 16-13-30(j) (felony possession of marijuana) or O.C.G.A. § 16-13-2(b) (misdemeanor

marijuana possession). Plaintiff's Fourth Amendment claims relating to Defendant's attempted arrest therefore fail as a matter of law.

## VI.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 51).

**SO ORDERED**, this the 20th day of June, 2023.

<u>*s/ Hugh Lawson*</u>
**HUGH LAWSON, SENIOR JUDGE**

aks