**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **ISRAEL TIMOTHY RUTLAND,** | |
| Plaintiffs, | |
| v. | Civil Action No. 7:15-CV-139 (HL) |
| **FLOYD COSPELICH, ROBERT BRANNEN, CASEY WILLIAMSON, and GENE SCARBOROUGH**, | |
| Defendant. | |

**ORDER**

On November 12, 2013, Plaintiff Israel Timothy Rutland led law enforcement officers on a high-speed chase that ended when Plaintiff's truck collided with another vehicle, severely injuring the driver and killing the two passengers. Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that the officers' pursuit and treatment of him following the accident violated his constitutional rights.[1] Before the Court is a Motion for Summary Judgment filed by Defendants Floyd Cospelich, Robert Brannen, Casey Williamson, and Gene Scarborough. (Doc. 52). Plaintiff filed no response to Defendants' motion. After reviewing the pleadings, briefs, affidavits, and other evidentiary materials

---

[1] Plaintiff filed this action pro se. He later retained counsel. (Doc. 8)

presented, the Court concludes that there are no genuine issues of material fact as to any claim and **GRANTS** Defendants' motion for summary judgment.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On November 11, 2013, Chris Strickland, a deputy sheriff employed by the Tift County Sheriff's Office, obtained two felony arrest warrants for Plaintiff Israel Timothy Rutland. (Doc. 52-2).[2] The first warrant charged Plaintiff with Aggravated Assault Upon a Law Enforcement Officer, in violation of O.C.G.A. § 16-5-21, and accused Plaintiff of assaulting Deputy Strickland with his 2011 Ford F-150. (Id. at p. 2). The warrant specifically alleged that in his attempt to flee the officer, Plaintiff "jumped in his truck" and pulled Deputy Strickland "in his yard with the vehicle." (Id.). The second arrest warrant charged Plaintiff with Fleeing/Eluding Police Officer, in violation of O.C.G.A. § 40-6-395. (Id. at p. 4).

Defendant Robert Brannen, Jr. was a deputy sheriff with the Tift County Sheriff's Office at the time of these events. (Brannen Decl., ¶ 2). Brannen drove past the home of Billy Strickland, Plaintiff's father, three or four times the evening of November 11, 2013, looking for Plaintiff. (Brannen Dep., p. 16-17). Brannen observed no lights on in the house and no vehicles in the yard. (Id.).  Defendant Casey Williamson, also Tift County Sheriff's Office deputy, returned to the

---

[2] Strickland filed a separate motion for summary judgment. (Doc. 51). The details of the events leading to issuance of the warrants are more thoroughly outlined in the Court's order addressing Strickland's motion.

2

Rutland residence early the following morning, November 12, 2013, to serve the outstanding warrants. (Williamson Decl., ¶ 2; Williamson Dep., p. 7, 16). Mr. Rutland denied knowing where to find Plaintiff and said he had not seen Plaintiff for a few days. (Id. at p. 32). Williamson spoke with Plaintiff's half-brother and half-sister, neither of whom knew where to locate Plaintiff. (Id. at p. 15).

Around 11:26 a.m., Williamson observed Plaintiff in a 2011 gray Ford F-150 pickup truck stopped at a stop sign. (Id. at p. 17-19). Williamson recognized Plaintiff from a photograph Williamson found posted to Plaintiff's Facebook account. (Id. at p. 17). Plaintiff was traveling in the direction opposite Williamson. (Id. at p. 18). Williamson turned his vehicle around, activated his lights and siren, and began pursuing Plaintiff. (Id.). Williamson estimates that his speed never exceeded sixty miles per hour. (Id. at p. 19). Captain Dennis Reese instructed Williamson to terminate the pursuit at 11:29 a.m. (Id.).

Shortly thereafter, Defendant Floyd Cospelich, another Tift County Sheriff's Office deputy, radioed that he located Plaintiff on Union Road turning onto Omega-Eldorado Road. (Cospelich Second Decl., ¶ 2, Cospelich Dep., p. 52-53). When Plaintiff saw Cospelich, he turned his truck around and proceeded south on Union Road. (Cospelich Dep., p. 53). Brannen instructed Cospelich to keep Plaintiff within sight. (Brannen Decl., Ex. A; Cospelich Second Decl., Ex. A; Cospelich Dep., p. 53). Cospelich requested dispatch notify Cook County that he

3

was pursing Plaintiff toward their jurisdiction. (Cospelich Second Decl., Ex. A). Cospelich maintained a safe speed and distance behind Plaintiff. (Id.). Cospelich followed Plaintiff at a speed of sixty-five to seventy miles per hour into the city limits of Lenox, Georgia. (Id.).

At some point, Plaintiff turned south onto Ralph McClellan Road, a dead-end road. (Id.; Cospelich First Decl., ¶ 7). When Plaintiff realized his error, he quickly turned his truck around and headed directly toward Cospelich. (Cospelich First Decl., ¶ 8; Cospelich Second Decl., Ex. A.). Cospelich drove off the side of the road to avoid being hit then turned around and followed Plaintiff east toward Enigma, Georgia. (Cospelich First Decl., ¶ 9, Cospelich Second Decl., Ex. A; Brannen Decl., Ex. A). Plaintiff then turned north onto Nashville-Enigma Road. (Cospelich Second Decl., Ex. A).

Both Williamson and Brannen soon caught up with Cospelich and joined the pursuit. (Brannen Decl., Ex. A; Cospelich Decl., Ex. A; Williamson Decl., Ex. A). Brannen contacted dispatch to alert the Georgia State Patrol and Berrien County to the ongoing chase. (Brannen Decl., Ex. A). Brannen instructed Cospelich and Williamson to activate their lights and sirens as they approached Enigma city limits. (Brannen Decl., Ex. A; Cospelich Decl., Ex. A; Williamson Decl., Ex. A; Williamson Dep., p. 26-27). Plaintiff still refused to stop and began accelerating. (Id.).

4

The Enigma Police Department attempted to stop Plaintiff. (Cospelich Second Decl., Ex. A). Plaintiff narrowly missed hitting an Enigma police vehicle and continued south on Nashville-Enigma Road at a high rate of speed. (Id.). Just outside of Nashville, Georgia, a Berrien County investigator took over as the lead pursuit vehicle. (Cospelich Second Decl., Ex. A; Williamson Decl., Ex. A). Berrien County officers deployed stop sticks near the intersection of Highway 125. (Id.). Plaintiff ran over the stop sticks and through the stop sign at the intersection. (Id.). Plaintiff's truck struck the driver's side of a Chevy Trail Blazer driven by Heidi Mancil. (Cospelich Second Decl., Ex. A; Mancil Dep., p. 20- 21). Ms. Mancil was ejected from her vehicle and suffered significant injuries. (Mancil Dep., p. 22). The impact killed Ms. Mancil's passengers, Matthew Horton and Kelly Prescott.

Williamson and Brannen approached Plaintiff's vehicle and saw Plaintiff slumped over, half his body on the floor of the truck and blood on his face. (Brannen Decl., Ex. A; Williamson Decl., Ex. A). Brannen instructed Plaintiff to remain in his truck. (Brannen Decl., Ex. A). Plaintiff ignored this directive and attempted to place his truck in gear. (Williamson Decl., Ex. A). Once he realized the truck was inoperable, Plaintiff exited the truck and attempted to flee on foot. (Brannen Decl., Ex. A; Williamson Decl., Ex. A).

Williamson grabbed Plaintiff by his coat. (Id.). Plaintiff tried to shimmy out of the coat. (Brannen Decl., Ex. A). Brannen placed his arms around Plaintiff, causing Brannen, Williamson, and Plaintiff to fall to the ground. (Brannen Decl., Ex. A; Williamson Decl., Ex. A). Brannen instructed Williamson to place Plaintiff in handcuffs. (Id.). Plaintiff continued to resist, refusing to give the deputies his hands. (Id.). Williamson told Plaintiff to submit or be tazed. (Id.). Even after Williamson finally wrangled Plaintiff into the handcuffs, Plaintiff continued to pull away and tried to stand up. (Brannen Decl., Ex. A). Williamson placed his knees on Plaintiff's legs to secure Plaintiff until leg irons could be affixed. (Id.). Plaintiff testified that Brannen and Williamson hit and kicked him in retribution. (Pl. Dep., p. 92-94, 97-98). Plaintiff was transported to Tift Regional Medical Center for treatment. (Pl. Dep., p. 101; Brannen Decl., Ex. A; Williamson Decl., Ex. A).

Plaintiff filed three lawsuits in relation to these events, which the Court consolidated into a single lawsuit. See Rutland v. Williamson, Case No. 7:15-CV-160-WLS-TQL and Rutland v. Strickland, Case No. 7:15-CV-161-HL, consolidated into Rutland v. Cospelich, Case No. 7:15-CV-139-HL. At the parties' request, the Court stayed these proceedings pending resolution of the criminal charges instituted against Plaintiff in Tift and Berrien Counties.

Plaintiff proceeded to trial in Berrien County Superior Court. On December 15, 2016, a jury returned a verdict finding Plaintiff guilty of the following:

- two counts felony murder

- two counts homicide by vehicle first degree

- serious injury by vehicle

- six counts fleeing or attempting to elude

- reckless driving

- driving with a suspended license

- failure to stop at a stop sign

(Doc. 52-9). Plaintiff was sentenced to life imprisonment plus six years with the possibility of parole. (Id.). Plaintiff filed a motion for new trial, which the Superior Court of Berrien County denied in significant part in 2021. (Doc. 39).

On August 7, 2019, Plaintiff entered a negotiated plea and pled guilty to the following offenses in Tift County Superior Court:

- three counts fleeing and attempting to elude an officer

- improper backing

- three counts driving with a suspended license

- reckless driving

- two counts failure to stop at a stop sign

(Doc. 36-1). Plaintiff was sentenced to five years imprisonment. (Id.).

## II.    SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. "If the record presents factual issues, the court must not decide

them; it must deny the motion and proceed to trial." <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The moving party must meet its burden even when, as here, the non-moving party fails to respond to the motion for summary judgment. Courts "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." <u>United States v. One Piece of Real Prop. Located at 5800 SW 7th Ave., Miami, Fla.</u>, 363 F.3d 1099, 1101 (11th Cir. 2004). In considering the merits of the unopposed motion, a court

> need not sua sponte review all of the evidentiary materials on file at the time the motion is granted[ ] but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.

<u>Id.</u> The court cannot simply accept the facts stated in the moving party's statement of material facts as true; rather, the court must review the movant's citations to the record and confirm that there are no genuine issues of material fact. <u>Id.</u> at 1103 n.6.

III.    **DISCUSSION**

Plaintiff asserts Defendants are liable under § 1983 for alleged violations of his constitutional rights. Plaintiff claims Defendants' aggressive pursuit of Plaintiff and the injuries Plaintiff sustained following his collision with a pedestrian vehicle amount to an unlawful seizure under the Fourth Amendment. Plaintiff alleges Defendants violated his rights under the Eighth Amendment by exceeding safe speeds, improperly using emergency lights, failing to communicate with other officers, violating established departmental policies, creating an unreasonable hazard to public safety, and failing to terminate the pursuit. Plaintiff further asserts Defendants intentionally engaged Plaintiff in a high-speed pursuit in revenge for Plaintiff's actions toward Deputy Chris Strickland on November 11, 2013. Finally, Plaintiff alleges Defendants Brannen and Williamson subjected him to excessive use of force during his arrest.

Defendants move for summary judgment as to each of Plaintiff's claims. Defendants maintain that Plaintiff's claims arising from Defendants' alleged conduct during the November 12, 2013 high-speed chase are barred by Heck v. Humphrey, 512 U.S. 477 (1994). To the extent Heck does not preclude Plaintiff's claims, Defendants argue they are entitled to qualified immunity.

## A.      Sheriff Scarborough

Defendant Gene Scarborough was the Sheriff of Tiff County in November 2013. Plaintiff named Sheriff Scarborough as a party to this action. However, neither Plaintiff's initial Complaint (Doc. 1) nor his Amended Complaint (Doc. 9) set forth any allegations of any conduct undertaken by Sheriff Scarborough.[3] There being no evidence from which a reasonable jury could conclude that Sheriff Scarborough was in any way involved in the events of November 12, 2013, Sheriff Scarborough is entitled to summary judgment.

## B.      Heck v. Humphrey

Defendants contend Plaintiff's § 1983 claims pertaining to the high-speed chase are barred because successful prosecution of these claims would necessarily imply the invalidity of Plaintiff's criminal convictions. In Heck v. Humphrey, the Supreme Court held:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487. The "rule is based on the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal

---

[3] At the conclusion of his Amended Complaint, Plaintiff requested additional time to assert claims against Sheriff Scarborough. (Doc. 9, p. 7). Plaintiff never supplemented his claims.

11

judgments." Henley v. Payne, 945 F.3d 1320, 1327 (11th Cir. 2019) (quotation omitted). But "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." Heck, 512 U.S. at 487 (emphasis in original). For Heck to apply, "it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory." Dyer v. Lee, 488 F.3d 876, 884 (11th Cir. 2007). "In other words, as long as it is possible that a § 1983 suit would not negate the underlying conviction, then the suit is not Heck-barred." Id. at 879-80.

Defendants have not established how Plaintiff's success in this § 1983 action would negate any element of any of his crimes of conviction. Plaintiff was charged and convicted of the following offenses connected to the November 12, 2013 chase: felony murder; homicide by vehicle; serious injury by vehicle; fleeing or attempting to elude; reckless driving; driving with a suspended license; and failure to stop at a stop sign. (Doc. 52-9). Defendants' motion focuses on Plaintiff's conviction for fleeing or attempting to elude. Defendants argue Plaintiff had no legal justification to flee from the police, and, in order to prevail in this § 1983 action, Plaintiff would have to show that he had such a right. Thus, success in the § 1983 case necessarily would suggest Plaintiff's wrongful conviction for fleeing to elude.

12

Defendants very likely are correct that Plaintiff's claims are Heck-barred. However, Plaintiff's claims have not been developed thoroughly enough for the Court to conclude as a matter of law that Plaintiff's claims relating to Defendants' conduct during the high-speed chase would somehow call the validity of his convictions into question. The Court therefore must deny Defendants' motion for summary judgment based on Heck. The Court does, however, find Defendants are entitled to qualified immunity as to each of Plaintiff's claims.

**C.    Qualified Immunity**

"A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). Qualified immunity offers complete protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "When properly applied, [qualified immunity]

protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

To receive qualified immunity, the official first must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Here, there is no dispute that Defendants were acting within their discretionary authority at the time of the alleged events. Once the official establishes that he was engaged in a "discretionary function," the burden shifts to the plaintiff "to show that the defendant is not entitled to qualified immunity." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original). To demonstrate that the official is not entitled to qualified immunity, the plaintiff must show (1) that the official violated a constitutional right; and (2) that the constitutional right violated was "clearly established" at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman, 370 F.3d at 1264.

### 1. Fourth Amendment

Plaintiff alleges Defendants violated his rights under the Fourth Amendment by chasing him into a roadblock in a high-traffic area. Plaintiff claims Defendants' action caused his involvement in a major collision that resulted in him sustaining a broken rib, fractures in his neck and back, and severe head

14

trauma. Plaintiff contends Defendants use of deadly force constitutes an unreasonable seizure under the Fourth Amendment.

The Fourth Amendment provides the right to be "free from the use of excessive force in the course of an investigatory stop or other 'seizure' of the person." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004). A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." Brower v. Cnty. Of Inyo, 489 U.S. 593, 596-97 (1989) (emphasis omitted) (explaining that a seizure occurs where a police cruiser pulls alongside a fleeing car and sideswipes it, causing a crash). "But if a suspect in a police chase unexpectedly loses control of his car and crashes, no seizure occurs" because the crash was not caused intentionally. Beshers v. Harrison, 495 F.3d 1260, 1266 (11th Cir. 2007) (citing Brower, 489 U.S. at 597; see also Cnty. of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) ("[N]o Fourth Amendment seizure would take place where a pursing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit, but accidentally stopped the suspect by crashing into him) (internal quotation marks and citation omitted).

Here, the evidence is undisputed that Defendants participated in a high-speed pursuit of Plaintiff, that speed-sticks were deployed to end Plaintiff's flight,

and that after hitting the speed-sticks, Plaintiff proceeded into an intersection and struck a non-police vehicle. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendants engaged in conduct designed to terminate the high-speed pursuit and, therefore, that a Fourth Amendment seizure occurred.

"[A] '[s]eizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'" Brower, 489 U.S. at 599; see also Scott v. Harris, 550 U.S. 372, 381 (2007). "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in the light of the facts and circumstances confronting him, without regard to his underlying intention or motivation." Kesinger, 381 F.3d at 1248 (citing Graham v. Conner, 490 U.S. 386, 397 (1989)). The reviewing court also "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Scott, 550 U.S. at 383.

The suspect in Scott led law enforcement officers on a high-speed chase not unlike the one in this case. A sheriff's deputy clocked the suspect traveling seventy-three miles per hour in a fifty-five mile per hour zone. Id. at 374. The deputy activated his lights, indicating that the suspect should pull to the side of the road. Id. The suspect sped away, racing at high speeds down a narrow, two-

16

lane road, swerving around dozens of other cars and causing cars traveling in both directions to flee to their respective shoulders to avoid being hit. Id. at 375, 379. He ran through numerous red lights, forcing the trailing officers to engage in similar hazardous maneuvers to maintain their pursuit. Id. at 379-80. Six minutes and ten miles into the chase, one of the deputies sought permission to attempt a Precision Intervention Technique ("PIT") maneuver, which is designed to cause a fleeing vehicle to spin to a stop. Id. at 375. Instead, the deputy applied his push bumper to the rear of the suspect's vehicle. Id. The suspect lost control of his vehicle. Id. The car careened off the road and down an embankment where it overturned and crashed. Id. The crash rendered the suspect a quadriplegic. Id.

The Supreme Court explained that judging the reasonableness of the deputy's actions required consideration of the risk of bodily harm posed by the deputy in light of the public threat the deputy was trying to eliminate. Id. at 383. The Court suggested the following method for "weighing the perhaps lesser probability of injuring or killing numerous bystanders against the perhaps larger probability of injuring or killing a single person":

> We think it appropriate in this process to take into account not only the number of lives at risk, but also their relative culpability. It was [the suspect], after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high speed flight that ultimately produced the choice between two evils that [the officer] confronted. Multiple police cars, with blue lights flashing and sirens blaring, had been chasing [the suspect] for nearly 10 miles, but he ignored their warning to stop. By contrast, those who might

have been harmed had [the officer] not taken the action he did were entirely innocent. We have little difficulty in concluding it was reasonable for [the officer] to take the action that he did.

Id. at 384.

The Court expressed concern about "lay[ing] down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger." Id. at 385 (emphasis omitted). To do so, the Court reasoned, would incentivize "impunity-earned-by recklessness." Id. In other words, "[e]very fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights." Id. The Court concluded the better rule was this: "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Id.

The evidence in this case demonstrates that the only show of authority by these Defendants was their flashing lights and sirens and continued pursuit of Plaintiff. Defendants neither deployed the stop sticks nor engaged in any other maneuver to end Plaintiff's flights. Arguably, Defendants cannot then be said to have seized Plaintiff as contemplated by the Fourth Amendment. See Lewis, 523 U.S. at 844. To the extent that use of the stop sticks can in some way be

18

attributed to Defendants, such conduct was objectively reasonable under the circumstances. Plaintiff led law enforcement on not one but two high speed chases on November 12, 2013, ignoring all warnings to stop and placing innocent bystanders at risk in three different jurisdictions. Law enforcement officials thus were justified in deploying the stop sticks in an effort to end Plaintiff's dangerous and reckless conduct. The fact that the pursuit of Plaintiff ended in a tragic accident that also injured Plaintiff is unfortunate. But there is no evidence that Defendants engaged in conduct that violated Plaintiff's Fourth Amendment rights. Absent evidence of a Fourth Amendment violation, Defendants are entitled to qualified immunity, and the Court **GRANTS** Defendants judgment as a matter of law as to this claim.

### 2.    Eighth Amendment

Plaintiff's Amended Complaint raises claims under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const., amend. VIII. The constitutional protections of the Eighth Amendment, however, apply "only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1572 (11th Cir. 1985). Plaintiff's claims arose prior to his conviction and incarceration. Accordingly, the Eighth Amendment does not apply, and Defendants are entitled to summary judgment.

### 3.    Fourteenth Amendment

Plaintiff claims Defendants violated his rights under the Fourteenth Amendment when they intentionally engaged in a dangerous high-speed pursuit that was likely to end in injury to Plaintiff and which was fueled by revenge. Plaintiff's Fourteenth Amendment claim is foreclosed by County of Sacramento v. Lewis, 523 U.S. 833. There, the Supreme Court examined the following issue:

> [W]hether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender.

Id. at 836. The Court answered "no," holding "that in such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." Id.

Plaintiff offers no evidence to support his claim that Defendants acted out of revenge. Nor has Plaintiff put forth any evidence from which a reasonable jury could find that Defendants engaged in conduct that would shock the conscious. Plaintiff therefore has failed to satisfy his burden of establishing that Defendants violated his rights under the Fourteenth Amendment. Defendants accordingly are entitled to qualified immunity.

20

### 4.    Excessive Force

Defendants argue qualified immunity protects them from any claim by Plaintiff that they subjected him to excessive force during his arrest. Plaintiff's Amended Complaint makes no specific reference to a use of force during his arrest. However, to the extent Plaintiff's Amended Complaint can be read to include a claim for excessive force, Defendants are entitled to qualified immunity.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1198 (citing Graham, 490 U.S. at 394-95). "A genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." Hadley v. Guitierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Bashir v. Rockdale Cty., Ga., 445 F.3d 1323, 1332 (11th Cir. 2006)). An officer's use of force is excessive under the Fourth Amendment if the use of force was "objectively [un]reasonable in light of the facts and circumstances confronting" the officer. Graham, 490 U.S. at 397. This standard acknowledges that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396-97.

At the summary judgment stage, a court cannot "simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances." Fils v. City of Aventura, 647 F.3d 1272, 1288 (11th Cir. 2011). In evaluating the necessity of the force, the court should examine "'(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Brown v. City of Huntsville, Ala., 608 F.3d 724, 738 (11th Cir. 2010)). "[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." Hadley, 526 F.3d at 1330; see also Saunders v. Duke, 766 F.3d 1262, 1265 (11th Cir. 2014).

The undisputed evidence reveals that Defendants Brannen and Williamson were the only two Defendants involved in Plaintiff's arrest. The two deputies testified that even after Plaintiff's collision with Ms. Mancil's vehicle, Plaintiff continued to attempt to flee from police. (Brannen Decl., Ex. A; Williamson Decl., Ex. A). Despite receiving instruction to remain in his vehicle, Plaintiff attempted to place his truck in gear. (Williamson Decl., Ex. A). When his truck would not respond, Plaintiff then tried to flee on foot. (Brannen Decl., Ex. A; Williamson Decl., Ex. A). Williamson grabbed Plaintiff, and Plaintiff tried to free himself from

Williamson's grasp. (Id.). Brannen then placed his arms around Plaintiff, and all three men fell to the ground. (Id.). Plaintiff testified that Brannen and Williamson pulled him from his truck, but his testimony is otherwise consistent with the deputies' statements that they fell to the ground. (Pl. Dep., p. 92-93, 94).

Plaintiff alleges Williamson and Brannen kicked and hit him. (Id. at p. 93). He claims Williamson said either, "I'm going to hit you for what happened here today" or "I really ought to kick your ass." (Id. at p. 94). Plaintiff was then placed in handcuffs and leg irons. (Id.; Brannen Decl., Ex. A; Williamson Decl., Ex. A). What Plaintiff failed to mention, however, was that he resisted the officers placing him in handcuffs. (Brannen Decl., Ex. A; Williamson Decl., Ex. A). He refused to present his arms to be handcuffed. After he was in handcuffs, Plaintiff continued trying to pull free. (Id.). Williamson had to hold down Plaintiff's legs so that they could be secured with leg irons. (Id.).

The evidence is clear that any use of force employed by Defendants Brannen and Williamson during Plaintiff's arrest was reasonable under the circumstances. Plaintiff led law enforcement officials on two high speed chases through three counties on November 12, 2013, which ended in the severe injury of one private citizen and the death of two others. The day before, he assaulted another law enforcement officer. Thus, there is evidence from which a jury could determine that Plaintiff was an immediate threat. Furthermore, the undisputed

23

evidence demonstrates that any force exerted occurred while Plaintiff was actively resisting arrest. There also is no evidence that Plaintiff sustained any injury resulting from the use of force. Thus, there is no evidence supporting a determination that Defendants Brannen and Williamson violated Plaintiff's Fourth Amendment right to be free from excessive use of force. These defendants accordingly are entitled to qualified immunity.

## VI.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 52). Judgment shall be entered in favor of Defendants Floyd Cospelich, Robert Brannen, Casey Williamson, and Gene Scarborough.

Plaintiff never properly served the following Defendants as required by Federal Rule of Civil Procedure 4: Chief Arel Valdez, Timmy Jernigan, Walter Kegley, Jr., Officer Robby Black, Donald Franklin, Len Moore, Trooper Corey Miller, Trooper Rodney Ryan Harding, Trooper Glenn Morgan, Trooper Richard Kennedy, Trooper Sel P. Jenkins, and Anthony Heath. Despite receiving notice of his duty to serve all Defendants (Doc. 10), Plaintiff took no steps to join these Defendants and has not otherwise established good cause for his dereliction. Pursuant to Rule 4(m), the Court accordingly dismisses Plaintiff's claims against

Defendants Valdez, Jernigan, Kegley, Black, Franklin, Moore, Miller, Harding, Morgan, Kennedy, Jenkins, and Heath.

**SO ORDERED**, this the 21st day of June, 2023.

_**s/ Hugh Lawson**_ _____
**HUGH LAWSON, SENIOR JUDGE**

aks